*E-Filed 8/27/13*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES JOSEPH CARTER,

    Petitioner,

    v.

GARY SWARTHOUT, Warden,

    Respondent.

                               /

No. C 11-1242 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2008, a San Mateo County Superior Court jury found petitioner guilty of rape by means of force or fear, and attempted oral copulation.[1] Based on this and prior convictions, he was sentenced to a term of 80 years-to-life in state prison. Petitioner was denied relief on

---

[1] The jury also found petitioner guilty of residential burglary, a conviction not at issue in this federal habeas action. (Ans., Ex. 6 at 1 n.1.) The jury rejected allegations that "the rape was committed during a burglary with intent to commit rape and the rape was committed during a burglary." (*Id.*)

state judicial review. This federal habeas petition followed.

Evidence presented at trial showed that in 2007, petitioner raped his girlfriend Kelly S., an adult female. Petitioner, who testified at trial, denied raping her. He admitted, however, that in 1990 he committed acts that resulted in two sets of convictions for rape by force or fear, and penetration by force or fear, against two female victims (Christina and K.W.) in separate incidents.

As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated his right to due process by admitting evidence of prior sexual misconduct; (2) the trial court violated his right to due process by instructing the jury with CALCRIM No. 361; (3) there was cumulative error; (4) there was insufficient evidence to support his conviction for attempted oral copulation; and (5) the length of his sentence violated the Eighth Amendment.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I.   Admission of Prior Sexual Misconduct

The trial court admitted evidence of petitioner's prior sexual misconduct against Christina and K.W. It also admitted evidence of a 2006 misdemeanor theft conviction, and allegations of sexual misconduct against Adriana, an adult female, in 1999.[2] Petitioner claims that admission of such evidence violated his due process right to a fair trial. More specifically, he contends that such evidence was prejudicial and constituted impermissible character or propensity evidence. The state appellate court concluded that the evidence was properly admitted, and rejected the claim.

Habeas relief is not warranted here. First, habeas relief can be granted on this sort of claim only if there are no permissible inferences a jury can draw from the evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In this case, it would be permissible for petitioner's jury to infer that his prior convictions weighed against his credibility.

---

[2] The parties stipulated that in 2000, a Contra Costa Superior Court jury acquitted petitioner of rape by force or fear, and of battery and rape of an unconscious Adriana. (Ans., Ex. 6.) Petitioner conceded on appeal that the acquittal "does not compel the exclusion of this evidence." (*Id.* at 16.)

Second, petitioner's claim would fail even if the evidence were irrelevant or prejudicial. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

Finally, insofar as petitioner claims that the admission of this evidence violated his due process rights to have character or propensity evidence excluded, his claim fails. Because the Supreme Court has reserved this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006).

In sum, the state court's decision was reasonable, and is entitled to AEDPA deference. Accordingly, this claim is DENIED.

## II.     CALCRIM No. 361 ("Failure to Explain or Deny Adverse Testimony")

In his trial testimony, petitioner offered a version of events different from that offered by the prosecution. Just prior to deliberations, the trial court instructed the jury with CALCRIM No. 361:

> [i]f the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove each element of the crime beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

(Ans., Ex. 6 at 18.) According to petitioner, this instruction damaged his defense to the point of prejudice because it impugned his believability, an issue of particular importance because this case turned on credibility.

The state appellate court did conclude that the trial court erred in giving the instruction. The error, however, was harmless:

> The CALCRIM No. 361 instruction does not direct the jury to draw an adverse inference. Instead, it applies only if the jury finds that the defendant failed to explain or deny evidence, in which case it permits the jury to consider his

> failure to explain or deny in evaluating that evidence. In addition, the instruction cautions the jury that the failure to deny or explain evidence does not create a presumption of guilt and does not alone prove guilt. And, favorably to the defense, it makes clear that the prosecution has the burden of proof of each element of the crime beyond a reasonable doubt. [Citation omitted.]
>
> The jury was instructed pursuant to CALJIC No. 200 to disregard any instructions that did not apply; we presume it followed that instruction. [Citation omitted.] In addition, the evidence of [petitioner]'s guilt was strong, based on [the victim's] testimony and the similarity of his prior uncharged sex offenses. Thus, we conclude it is not reasonably probable that a result more favorable to [petitioner] would have been reached had the CALCRIM No. 361 instruction not been given.

(*Id.* at 19–20.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the deficient instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id.* at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

Habeas relief is not warranted here. The state appellate court reasonably determined that any error was harmless. A look at the instruction's wording and its context in the record confirms this. First, it allows, but does not require, that the jury consider the failure to deny. Because the instruction was permissive, the jury was not required to consider such evidence, much less required to make a finding of guilt based upon it. Rather, the jury was free to accept or reject such evidence, and even if it accepted such evidence as true, to give it any weight it chose. Also, it is reasonable to conclude that the jury regarded petitioner's version of events <u>as</u> a denial and explanation of the evidence against him.

Second, the instruction clearly told the jury that petitioner's failure — if any — to deny was insufficient to show guilt. Not only was such failure only <u>one</u> consideration among many, the prosecution still had to prove the existence of each element of every offense beyond a reasonable doubt, a duty reinforced by other jury instructions. Jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). In sum, petitioner has not shown that there was no reasonable basis for the state court to deny relief. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The state court's decision was reasonable, and is entitled to AEDPA deference. This claim is DENIED.

### III.  Cumulative Error

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003).

Because there was one possible error — and that one harmless — petitioner has not shown that there were several errors, let alone that several errors prejudiced him. The state appellate court's decision was reasonable, and is entitled to AEDPA deference. This claim is DENIED.

### IV.  Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction for attempted oral copulation. The state appellate court rejected this claim:

> [Petitioner's] assertion that "[t]he limited questioning by the prosecutor coupled with [Kelly's] answers established that the challenged conviction rested on speculation," borders on frivolous. The record establishes that Kelly told both the police and the sexual assault rape trauma nurse that [petitioner] had attempted to orally copulate her. She testified that his physical movements constituting the attempting oral copulation were the same movements he had previously made in the past when he was about to orally copulate her. Her testimony that she was physically trying to resist his attempt to orally copulate her established the force element of the attempted oral copulation offense. We conclude that ample evidence supports [petitioner's] attempted oral copulation conviction.

(Ans., Ex. 6 at 21.)

When reviewing a state court conviction, a federal court must determine only whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). California defines oral copulation as "the act of copulating the mouth of one person with the sexual organ or anus of another person." Cal. Penal Code § 288a. Such acts become felonious when "accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury." *People v. Raley*, 2 Cal. 4th 870, 890 (Cal. 1992).

Sufficient evidence existed to support petitioner's conviction. There was clear testimony that petitioner tried to put his penis in Kelly S.'s mouth despite her verbal and physical resistance:

> As Kelly was falling asleep, she heard [petitioner] enter her bedroom. He then grabbed her and turned her to face him. He was naked. When she tried to get up, he held her down. He then laid on top of her and said, "I want to have you. It will be the last time." Kelly repeatedly said she "didn't want to" and tried to push him away. She bit his lip when he tried to kiss her and unsuccessfully resisted as he tried to pull off her pants. After removing her pants, he attempted to insert his penis into her vagina and she tried to push him away. [Petitioner] also attempted to orally copulate her while she repeatedly told him "no." When he saw that she was trying to get her cell phone, he grabbed it from her and threw it on the floor. Despite Kelly's resistance, [petitioner] repeatedly inserted his penis into her vagina. She was crying and telling him to stop. After five or 10 minutes, [petitioner] stopped after he ejaculated.

(Ans., Ex. 3.) As is apparent, such testimony meets the statute's definition of attempted oral copulation. On such a record, the jury's finding was not so insupportable as to fall below the bare threshold of rationality. *Coleman*, 132 S. Ct. at 2065.

1  Petitioner contends, however, the evidence was insufficient in two ways. First, Kelly
2  S. "did not state that [petitioner] made physical contact with her vagina." Second, her
3  testimony was too vague ("he kind of wants to go down [on] me when he was holding me")
4  is too vague. (Pet. at 10.)

5  Kelly S.'s testimony defeats these contentions, as the state appellate court found: "His
6  head was going down to my vagina, but because I was fighting he went up again [ ]." (Ans.,
7  Ex. 2, Vol. 3 at 235.) She believed that he had been trying to orally copulate her because "he
8  used to do it before. He — when we were together, intimate." (*Id.* at 236.) First, there is
9  clear, not vague, testimony of attempted oral copulation. Second, it is immaterial that
10 petitioner never had oral-genital contact with her — the conviction was for attempted, not
11 completed, oral copulation.

12  Petitioner's claim is another way of asserting that the jury should have believed his
13 defense and rejected the prosecution's case. This Court, however, must accord the jury's
14 credibility determinations near-total deference. *Jackson*, 443 U.S. at 326. Indeed, if
15 confronted by a record that supports conflicting inferences (as petitioner contends here), a
16 federal habeas court "must presume — even if it does not affirmatively appear in the record
17 — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer
18 to that resolution." *Id.* In sum, the state appellate court's rejection of his claim was
19 reasonable, and is entitled to AEDPA deference. Accordingly, petitioner's claim is DENIED.

20 **V.   Eighth Amendment Claim**

21  Petitioner claims that his sentence of 80 years-to-life violates the Eighth Amendment.
22 The state appellate court denied this claim on both procedural and on substantive state and
23 federal grounds.

24  A criminal sentence that is not proportionate to the crime for which the defendant was
25 convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983). Yet
26 successful challenges to the proportionality of particular sentences are "exceedingly rare"
27 outside "the context of capital punishment." *Id.* at 289–90. Eighth Amendment jurisprudence
28

1   "gives legislatures broad discretion to fashion a sentence that fits within the scope of the
2   proportionality principle — the precise contours of which are unclear." *Lockyer v. Andrade*,
3   538 U.S. 63, 76 (2003) (internal quotations and citations omitted).  "The Eighth Amendment
4   does not require strict proportionality between crime and sentence.  Rather, it forbids only
5   extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538
6   U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,
7   concurring)).  Where it cannot be said as a threshold matter that the crime committed and the
8   sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative
9   analysis of the sentence received by the defendant to those received by other defendants for
10  other crimes.  *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

11   The Supreme Court upheld a life sentence without the possibility of parole for an
12  offender whose sole felony conviction was for possessing 672 grams of cocaine.  *Harmelin*,
13  501 U.S. at 995, 961.  In *Andrade*, the Supreme Court, under the highly deferential AEDPA
14  standard, upheld a sentence of two consecutive 25 year terms for the nonviolent theft of $150
15  worth of videotapes.  538 U.S. at 77.

16   Under these precedents, habeas relief is not warranted here.  Petitioner was sentenced
17  to 80 years to life based on the rape of Kelly S. and on his prior convictions.  If, as in
18  *Harmelin*, a life sentence for a single nonviolent drug possession conviction was found not to
19  violate the Eighth Amendment, then petitioner's sentence for his rape of Kelly S. and for his
20  recidivism similarly will not rise to a violation of the Eighth Amendment.  The state appellate
21  court's rejection of this claim was reasonable, and is entitled to AEDPA deference.
22  Accordingly, petitioner's claim is DENIED.

## CONCLUSION

24  The state court's adjudication of the claim did not result in a decision that was contrary
25  to, or involved an unreasonable application of, clearly established federal law, nor did it result
26  in a decision that was based on an unreasonable determination of the facts in light of the
27  evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: August 27, 2013

_____
RICHARD SEEBORG
United States District Judge